Michael Lynn Gabriel, Esq. (SBN 86924)
Law Office of Michael Lynn Gabriel
1903 A Cooley Avenue
East Palo Alto, CA 94303
Telephone: 650-888-9189
Email: aetal@earthlink.net

Attorneys for Plaintiff
SALOOJAS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALOOJAS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services; LORI CHAVEZ-DEREMER, in her official capacity as Secretary of Labor; and SCOTT BESSENT, in his official capacity as Secretary of the Treasury, DOES 1–100, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND/OR WRIT OF MANDAMUS FOR THE CARES ACT aka TRUMP CARES ACT** <br><br> 1. Violation of the Administrative Procedure Act [5 U.S.C. § 706(1)] <br><br> 2. Relief under the Mandamus Act [28 U.S.C. § 1361] |

# INTRODUCTION

1. This is an Action for declaratory relief, injunctive relief, and mandamus under the Administrative Procedure ACT, 5 U.S.C. section 701, et seq. (the "APA"), and the Mandamus ACT, 28 U.S.C. section 1361.

2. Congress charged the **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, the UNITED STATES DEPARTMENT OF LABOR,** and the **UNITED STATES DEPARTMENT OF TREASURY** with implementing portions of the Coronavirus Aid, Relief, and Economic Security ACT (" **CARES ACT**" aka **TRUMP CARES ACT**), Pub. L. No. 116-136, § 3202(a) 134 Stat. 281 (2020) and the Families First Coronavirus Response ACT ("**FFCRA**"), Pub. L. No. 116-127, § 6001(a), 134 Stat. 178 (2020).

By this Complaint, Plaintiff SALOOJAS, INC. asks this Court to compel the Secretaries of these three agencies to order group health plans and insurers to: (1) comply with **FFCRA** and the **CARES ACT;** and (2) enforce the reimbursement of Saloojas for those COVID-19 diagnostic tests it provided to insureds.

**JURISDICTION AND VENUE**

3. This Court has original jurisdiction over this civil action which arises under the laws of the United States. 28 U.S.C. § 1321; 5 U.S.C. § 706.

4. This Court has original jurisdiction over this Action asserted against the United States. 28 U.S.C. § 1346(b)(1).

5. This Courts has original jurisdiction of this Action in the nature of mandamus seeking to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. 28 U.S.C. § 1361.

6. Venue is proper in this District because Defendants are officers and/or employees of the United States and (A) Saloojas has its principal place of business in this district; and/or (B) a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(e)(1).

## PARTIES

7. Plaintiff **SALOOJAS, INC.**, is, and at all times herein mentioned was, a corporation licensed to do business in Fremont California and with its principal place of business in Fremont, California.

8. Defendant **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES** is an arm of the Executive Branch of the United States. The **DEPARTMENT OF HEALTH AND HUMAN SERVICES** is responsible for, among other things, ensuring that group health plans and insurers comply with **FFCRA** and the **CARES ACT** and the enforcement of the reimbursement of out-of-network providers, like Saloojas, for providing diagnostic testing to insureds.

9. Defendants **UNITED STATES DEPARTMENT OF LABOR** is an arm of the Executive Branch of the United States. The **DEPARTMENT OF LABOR** is responsible for, among other things, ensuring that group health plans and insurers comply with **FFCRA** and the **CARES ACT** and the enforcement of the reimbursement of out-of-network providers, like Saloojas, for providing diagnostic testing to insureds.

10. Defendant **UNITED STATES DEPARTMENT OF TREASURY** is an arm of the Executive Branch of the United States. The **DEPARTMENT OF TREASURY** is responsible for, among other things, ensuring that group health plans and insurers comply with **FFCRA** and the **CARES ACT** and the enforcement of the reimbursement of out-of-network providers, like Saloojas, for providing diagnostic testing to insureds.

11. Defendant **ROBERT F. KENNEDY** is the Secretary of Health and Human Services. Defendant **ROBERT F. KENNEDY** has full authority, in his official capacity to administer and enforce FFCRA and the **CARES ACT**, including the authority to compel group health plans and insurers to comply with

FFCRA and the **CARES ACT** and the enforcement of the reimbursement of out-of-network providers, like Saloojas, for providing diagnostic testing to insureds.

12. Defendant **LORI CHAVEZ-DEREMER** is the Secretary of Labor. Defendant **LORI CHAVEZ-DEREMER** has full authority, in her official capacity to administer and enforce **FFCRA** and the **CARES ACT**, including the authority to compel group health plans and insurers to comply with FFCRA and the **TRUMP CARES ACT** and the enforcement of the reimbursement of out-of-network providers, like Saloojas, for providing diagnostic testing to insureds.

13. Defendant **SCOTT BESSENT** is the Secretary of Treasury. Defendant **SCOTT BESSENT** has full authority, in his official capacity to administer and enforce **FFCRA** and the **CARES ACT,** including the authority to compel group health plans and insurers to comply with FFCRA and the **CARES ACT** and the enforcement of the reimbursement of out-of-network providers, like Saloojas, for providing diagnostic testing to insureds.

## GENERAL ALLEGATIONS

14. In late March of 2020, America's worst pandemic in over 100 years began ravaging the country. Persons infected with the COVID-19 virus easily spread the disease – even before symptoms developed. Thus, any effort to contain the pandemic required rapid testing for as many Americans as possible to identify infected persons. Rapid testing would permit infected persons to receive prompt treatment and to quarantine themselves to slow and/or prevent the transmission of this highly communicable virus.

15. To address this public health emergency, Congress passed the **Coronavirus Aid, Relief, and Economic Security Act** ( "**CARES ACT**" also known as the **"TRUMP CARES ACT"**), Pub. L. No. 116-136, § 3202(a) 134 Stat. 281 (2020), and the **Families First Coronavirus Response ACT ("FFCRA"**), Pub. L. No. 116-127, § 6001(a), 134 Stat. 178 (2020).

16. The relevant terms of the **FFCRA** are:

> SEC. 6001. COVERAGE OF TESTING FOR COVID–
>
> (a) IN GENERAL.—A group health plan and a health insurance issuer offering group or individual health insurance coverage ... ***shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management requirements***, for the following items and services furnished during any portion of the emergency period ... beginning on or after the date of the enactment of this ACT:
>
> (1) In vitro diagnostic products... for the detection of SARS–CoV–2 or the diagnosis of the virus that causes COVID–19 that are approved, cleared, or authorized ... and the administration of such in vitro diagnostic products....
>
> \*\*\*
>
> (b) ENFORCEMENT.— The provisions of subsection (a) shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury to group health plans and health insurance issuers offering group or individual health insurance coverage as if included in the provisions of part A of title XXVII of the Public Health Service ACT, part 7 of the Employee Retirement Income Security ACT of 1974, and subchapter B of chapter 100 of the Internal Revenue

Code of 1986, as applicable.

(c) IMPLEMENTATION.— The Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury may implement the provisions of this section through sub-regulatory guidance, program instruction or otherwise.

**FFCRA, § 6001** (emphasis added).

17. The relevant terms of the **CARES ACT** are:

**SEC. 3202. PRICING OF DIAGNOSTIC TESTING.**

**(a) REIMBURSEMENT RATES.**—A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of division F of the Families First Coronavirus Response Act (Public Law 116–127) with respect to an enrollee *shall reimburse the provider* of the diagnostic testing as follows:

(1) If the health plan or issuer has a negotiated rate with such provider in effect before the public health emergency declared under section 319 of the Public Health Service ACT (42 U.S.C. 247d), such negotiated rate shall apply throughout the period of such declaration.

(2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer *shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website*, or such plan or issuer may negotiate a rate with such provider for less than such cash price.

> (b) REQUIREMENT TO PUBLICIZE CASH PRICE FOR DIAGNOSTIC TESTING FOR COVID–19.—
>
> (1) IN GENERAL.—During the emergency period declared under section 319 of the Public Health Service ACT (42 U.S.C. 247d), each provider of a diagnostic test for COVID–19 shall make public the cash price for such test on a public internet website of such provider.
>
> (2) CIVIL MONETARY PENALTIES.—The Secretary of Health and Human Services may impose a civil monetary penalty on any provider of a diagnostic test for COVID–19 that is not in compliance with paragraph (1) and has not completed a corrective action plan to comply with the requirements of such paragraph, in an amount not to exceed $300 per day that the violation is ongoing
>
> **CARES ACT, § 3202 (emphases added)**.

18. As is pertinent here, these statutes require group health plans and insurers to cover COVID-19 diagnostic testing by qualified providers at no cost to their insureds. In the absence of a negotiated rate, insurers are required to pay for the testing administered to their insureds at the cash rate the provider publishes on its website (and the providers are required to post a public cash price).

19. To ensure that no person would have to consider the economic cost of getting tested, **FFCRA** and the **CARES ACT** prohibited co-payments, deductibles, and co-insurance. To incentive medical providers to participate and invest in establishing testing centers that would test anyone – regardless of insurance coverage – **FFCRA** and the **CARES ACT** required insurers to cover the cost of COVID-19 testing from out-of-network providers (those who do not have a contractual relationship with the insurer) on the same terms as in-network

1  providers – no out of pocket expenses, no co-payments, and no deductibles.

2  20. Congress recognized, however, that insurers often pay very little to out-of-network providers, to encourage plan members to use in-network providers who have agreed to provide services at discounted rates. To prevent providers from declining to provide testing services to patients who were out-of-network with respect to the providers, Congress mandated that insurers reimburse out-of-network providers at specified rates.

21. Dr. Parmjit Singh, the founder of Saloojas, was among the earliest pioneers in establishing COVID-19 testing centers for Northern California residents. Dr. Singh's efforts resulted in over 35,000 COVID-19 tests, including no-cost testing to over 3,000 uninsured patients.

22. Saloojas is an out of network provider. Pursuant to the **TRUMP CARES ACT,** section 3202(a)(2), insurers, including Aetna Health of California, Inc., were required to pay Saloojas's entire bill for providing Covid testing services to Aetna's insured.

23. During the First Trump Administration, group health plans and insurers followed the **TRUMP CARES ACT** and fully paid the mandated posted prices of out of network providers for their rendered COVID Medical services

24. After the Biden Administration took office in 2021, some group health plans and insurers, including Aetna, failed to pay Saloojas for Covid testing services for their insured as required by the **TRUMP CARES ACT.** Saloojas requested that the Biden Administration's Department of Health and Human Services enforce the **TRUMP CARES ACT** but it never did so.

25. Because the Biden Administration would not enforce the TRUMP CARES ACT, Saloojas filed several suits against group health plans and insurers, including Aetna, seeking to obtain payments due from the group health plans and insurers pursuant to **FFCRA** and the **TRUMP CARES ACT**.

26. The district court granted Aetna's motion to dismiss Saloojas's claims on the grounds that **FFCRA** and the **CARES ACT** do not provide an Implied Private Right of Action. In so ruling, the district court stated: "FFCRA Section 6001 provides that ***the Secretaries of Health and Human Services, Labor, and the Treasury may enforce Section 6001(a) against 'group health plans and health insurance issuers***.'" *Saloojas, Inc. v. Aetna Health of California, Inc.*, 2022 WL 2267786, *4 (N.D. Cal. June 23, 2022) (quotation omitted) (emphasis added). The district court assumed "without deciding that FFCRA ***Section 6001 allows the Secretaries to enforce CARES ACT Section 3202(a) against insurers*** ...." *Ibid.* (emphasis added).

27. The Ninth Circuit affirmed the district court's ruling. In concluding that no private right of action exists under **FFCRA** and the *CARES ACT*, the Ninth Circuit held that ***the Secretaries of Health and Human Services, Labor, and Treasury had the authority to enforce FFCRA and the CARES ACT***.

28. The Ninth Circuit stated: "Section 6001 of **FFCRA** contains enforcement and implementation provisions for the Secretary of various agencies—Health and Human Services, Labor, and the Treasury." *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1013, 1016 (9th Cir. 2023). The Ninth Circuit further noted that FFCRA section 6001 "provide[s] an enforcement mechanism ***but only through the Secretaries*** ...." *Ibid.* (emphasis added).

29. In the proceedings before the Ninth Circuit, Aetna argued: "FFCRA § 6601(b) ***vests the Secretaries of HHS, Labor, and the Treasury with the power to enforce Section 6601(a)*** against "'group health plans and health insurance issuers.'" Ninth Cir. Case No. 22-16034, Dkt. No. 20 at 29 (quotation omitted) (emphasis added). Aetna also conceded that the **CARES ACT** provided granted "broad enforcement authority" to "federal agencies." *Ibid.*

30. The United States Supreme Court denied Saloojas's Petition for a Writ of Certiorari.

31. On January 24, 2025, Saloojas's counsel sent an e-mail to Dr. Jeffrey Reynosol, the Region 9, Regional Director at the Department of Health and Human Services, asking the Secretary of Health and Human Services to enforce FFCRA and the CARES ACT by ordering group health plans and insurers, including Aetna, to: (1) comply with the **FFCRA** and the **CARES ACT;** and (2) the enforcement of the reimbursement of Saloojas (and other providers of COVID-19 diagnostic tests).

32. The e-mail also advised that if the Secretary of Health and Human Services failed to take action, Saloojas would be compelled to file a Writ of Mandamus.

33. To date, group health plans and insurers have failed to fully reimburse Saloojas for providing approximately 36,000 COVID-19 diagnostic tests to insureds. As the result of the nonpayment for the COVID Medical services rendered pursuant to the **TRUMP CARES ACT,** Saloojas has been forced to file for bankruptcy protection. The bankruptcy petition was filed despite being owed over $18 million on unpaid **TRUMP CARES ACT** Claims - the reimbursement of which had not been enforced by the Biden Administration.

34. Saloojas is entitled to reimbursement of approximately $18 million in unpaid claims. Of that amount, about 70% would be applied simply to reimburse Saloojas for its out-of-pocket expenditures incurred to provide the COVID-19 diagnostic testing to insureds under **FFCRA** and the **TRUMP CARES ACT.**

35. Because the group health plans and insurers have failed to comply with FFCRA and the **TRUMP CARES ACT** (and because the Secretaries have not compelled compliance with **FFCRA** and the **TRUMP CARES ACT**), Saloojas is being compelled to file for bankruptcy.

36. Non-enforcement of the **TRUMP CARES ACT** will set a bad precedent which would erode the confidence and integrity in both the TRUMP ADMINISTRATION and the Congress of the United States. By the non-enforcement of the **TRUMP CARES ACT,** if in the future, there would be another pandemic and out of network providers are once again called upon to render medical services with guarantees of full payment as they were in the **TRUMP CARES ACT,** they may refuse to do so knowing that they were not similarly paid under the **TRUMP CARES ACT** and could face bankruptcy if they were agin tp rendered medical services again and once again not be paid for those services.

**The Secretaries Must Act**

37. On June 23, 2020, the Departments of Health and Human Services, Labor, and Treasury issued tri-agency FAQs (Part 43), clarifying certain provisions of FFCRA and the CARES ACT. The FAQs expressly stated: "*The Departments will enforce the applicable provisions of the FFCRA (and the related provisions of the CARES ACT*), in conjunction with states, where applicable." Department of Labor, the Department of Health and Human Services, and the Department of the Treasury, FAQs About Families First Coronavirus Response ACT and Coronavirus Aid, Relief, And Economic Security ACT Implementation Part 43 (June 23, 2020) (emphasis added).

38. On July 7, 2020, five members of Congress sent a letter to: (1) the Secretary of the Department of Health and Human Services; (2) the Secretary of the Department of Labor; and (3) Secretary of the Treasury. The letter states:

> "We write to express serious concerns regarding the Administration's implementation of the [FFCRA] and the [CARES ACT]. There have been troubling reports regarding some health plans refusing to provide coverage of tests for [COVID-19].... [W]e urge you to take immediate

action to clarify the obligations of group health plans and insurers to provide robust and comprehensive coverage of COVID-19 testing. Congressional letter to the Department of Health and Human Services, the Department of Labor, and Secretary of Treasury dated July 7, 2020" (footnotes omitted).

39. The July 7 letter directed to the Secretaries demonstrates that Congress believed that the Secretaries had the right and authority to take steps necessary to implement **FFCRA** and the **TRUMP CARES ACT**. Such steps necessarily include the right and authority to compel group health plans and insurers to reimburse providers who provided COVID-19 tests.

40. On October 23, 2020, fifty-four members of Congress sent a letter to the Secretary of Health and Human Services, again expressing concerns about reports of individual claims for COVID-19 testing being denied. The letter stated: "In recent weeks, there has been an increase of coverage denials from health plans for COVID-19 testing, particularly for asymptomatic individuals." The letter also stated: "We urge [the Department of Health and Human Services] to clarify the June 23 tri-agency guidance to be consistent with congressional intent and, ultimately, so that individuals who need a test can receive one without cost-sharing, medical management, or prior authorization, and regardless of whether the individual is symptomatic." Congressional letter to Secretary of Health and Human Services dated October 23, 2020.

41. The October 23 letter directed to the Secretary of Health and Human Services, like the July 7 Congressional letter, further demonstrates that Congress believed that the Secretaries had the right and authority to take steps necessary to implement **FFCRA** and the **CARES ACT**. Such steps necessarily include the right and authority to compel group health plans and insurers to reimburse providers who provided COVID-19 tests.

42. In *Biodiagnostic Labs, Inc. v. Aetna Health Inc. (New York)*, 2024 WL 3106169, (E.D.N.Y. June 23, 2024), the district court concluded that the Secretaries can enforce FFCRA and the CARES ACT. *Id.* at *4. The court explained that the enforcement provision in FFCRA section 6001(b) refers to FFCRA section 6001(a)(1) – "the provision that requires insurance companies to pay for COVID-19 diagnostic tests." *Ibid.* "Thus, subsection (b) makes this obligation enforceable just like any other ERISA, Public Health Service ACT, or Internal Revenue Code obligation – and the Secretaries are expressly granted enforcement responsibilities for those statutes." *Ibid.* "The fact that there is such a remedy does not leave the statute unenforceable ...." *Ibid.*

## FIRST CAUSE OF ACTION
## (Against All DEFENDANTS)
## Violation of the APA [5 U.S.C. § 706(1)]

43. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in paragraph 1 through 42 as if set forth fully herein.

44. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant

45. A district court may compel an agency to perform a ministerial or nondiscretionary act, or to take action upon a matter without directing the agency how it shall act.

46. A reviewing court has the power to "compel agency Action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

47. The agency delay is unreasonable under the APA because:

(1) COVID-19 was a global pandemic which required a rapid response from diagnostic test providers to control its spread;

  (2) Congress expected the Secretaries to act promptly enforce the **FFCRA** and the **TRUMP CARES ACT** to ensure that out-of-network providers, like Saloojas, provide COVID diagnostic testing on the same terms as in-network providers – no out of pocket expenses, no co-payments, and no deductibles;

  (3) the Secretaries' delay in enforcing FFCRA and the **TRUMP CARES ACT** is intolerable because compelling group health plans and insurers to reimburse out-of-network diagnostic test providers was absolutely critical for human health and welfare and to combat the global pandemic presented by COVID-19;

  (4) expediting agency action to enforce **FFCRA** and the **CARES ACT** will not materially impact the Departments' other responsibilities as enforcement will likely be accomplished by merely sending a letter to group health plans and insurers instructing them to immediately reimburse diagnostic test providers, like Saloojas; and

  (5) the failure to promptly enforce **FFCRA** and the **CARES ACT** will discourage providers from taking critical steps to address future global health concerns, believing that they may not be reimbursed for their expenditures – all to the detriment of public health and safety.

48. The Secretaries are vested with the authority to compel group health plans and insurers to comply with **FFCRA** and the **CARES ACT** and to reimburse out-of-network providers, like Saloojas, for providing diagnostic testing to their insured.

49. The Secretaries have failed to exercise their vested authority, permitting group health plans and insurers to violate FFCRA and the **CARES ACT**, to the detriment of out-of-network providers, like Saloojas.

50. The **FFCRA** and the **CARES ACT** provide for mandatory reimbursement to out-of-network providers at specified rates. Thus, reimbursement is required, it is not optional.

51. Out-of-network providers who provided **COVID** diagnostic testing to insureds, like Saloojas, are entitled to prompt relief. Absent prompt relief, other out of network providers such as Saloojas maycalso be forced to file bankruptcy.

52. Saloojas asks the Court to issue an order stating that group health plans and insurers who failed to reimburse out-of-network providers at specified rates violated **FFCRA** and the **CARES ACT**

53. Saloojas also asked this Court to issue a mandatory injunction compelling the Secretaries to facilitate the mandatory enforcement of the reimbursement required under **FFCRA** and the **CARES ACT.**

## SECOND CAUSE OF ACTION
## (Against All DEFENDANTS)
### Relief under the Mandamus ACT [28 U.S.C. § 1361]

54. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in paragraph 1 through 53 as if set forth fully herein.

55. Plaintiff seeks a writ of mandamus under the Mandamus Act, 28 U.S.C. section 1361, compelling **Defendants KENNEDY, JR., CHAVEZ-DEREMER, and BESSENT** to perform their Congressionally mandated duties and facilitate the mandatory reimbursement required under FFCRA and the **TRUMP CARES ACT** by ordering group health plans and insurers to reimburse out-of-network providers who provided **COVID** diagnostic testing to their insureds, like Saloojas.

56. Defendants **KENNEDY, JR., CHAVEZ-DEREMER,** and

1 BESSENT are officers of federal agencies. Defendant **KENNEDY** is the Secretary of Health and Human Services. Defendant **CHAVEZ-DEREMER** is the Secretary of Labor. Defendant **BESSENT** is the Secretary of Treasury.

57. Defendants **KENNEDY, JR., CHAVEZ-DEREMER,** and **BESSENT** have the authority and obligation to oversee their agencies.

58. Defendants **KENNEDY, JR., CHAVEZ-DEREMER,** and **BESSENT** are vested with the authority to compel group health plans and insurers to comply with **FFCRA** and the **TRUMP CARES ACT** and to reimburse out-of-network providers, like Saloojas, for providing **COVID** diagnostic testing to their insured.

59. The Secretaries have failed to exercise their vested authority, permitting group health plans and insurers to violate FFCRA and the **TRUMP CARES ACT,** to the detriment of out-of-network providers, like Saloojas.

60. Under both **FFCRA** and the **CARES ACT**, Congress imposed a clear, certain, and mandatory duty on the Secretaries to ensure that group health plans and insurers reimburse out-of-network providers, like Saloojas, for **COVID** diagnostic tests provided to insureds.

61. The duty of Defendants **KENNEDY, JR., CHAVEZ-DEREMER,** and **BESSENT** to order compliance with FFCRA and the CARES ACT is clear and certain as Congress mandated such action through use of mandatory language in **FFCRA** and the **CARES ACT**.

62. The duty of Defendants **KENNEDY, JR., CHAVEZ-DEREMER**, and **BESSENT** to order compliance with FFCRA and the **TRUMP CARES ACT** is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt.

63. Saloojas has no other adequate remedy other than a writ of mandamus requiring Defendants **KENNEDY, JR., CHAVEZ-DEREMER**, and **BESSENT** to perform their job functions as required by Congress.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff prays for judgment in its favor and against Defendants, and requests that this court award Plaintiff the following:

1. Declare, under 28 U.S.C. section 2201, that Defendants violated **FFCRA** and the **TRUMP CARES ACT** by failing to order group health plans and insurers to reimburse providers, including Saloojas, for **COVID** diagnostic tests provided to insureds.

2. Enter a preliminary and permanent injunction under 5 U.S.C. § 706(1) requiring Defendants to order group health plans and insurers to reimburse providers, including Saloojas, for **COVID** diagnostic tests provided to insureds, as mandated by **FFCRA** and the **TRUMP CARES ACT.**

3. Either as an alternative to an injunction under 5 U.S.C. § 706(1), or in conjunction with same, issue a writ of mandamus requiring Defendants to order group health plans and insurers to fully reimburse providers, including Saloojas, for **COVID** diagnostic tests provided to insureds, as mandated by **FFCRA** and the **TRUMP CARES ACT.**

4. For such other and further relief as the Court may deem just and proper.

DATED: June 3, 2025          **Law Office of Michael Lynn Gabriel**

By: /s/ Michael L. Gabriel
Attorney for Plaintiff
SALOOJAS, INC.