UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SALOOJAS, INC.,

          Plaintiff,

    v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

          Defendants.

Case No.  25-cv-04735-EMC

**ORDER GRANTING MOTION TO DISMISS**

Docket No. 10

## I.      INTRODUCTION

Defendants move to dismiss Saloojas, Inc.'s ("Saloojas") Complaint, which seeks to compel the United States Department of Health and Human Services ("HHS"), Department of Labor, and Department of the Treasury ("Treasury"), along with their respective Secretaries, to enforce the reimbursement provisions of two statutes passed during the COVID-19 pandemic: the Families First Coronavirus Act ("FFCRA") and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").  Saloojas alleges that it is owed more than $18 million for tens of thousands of COVID-19 diagnostic tests that it provided to the public and contends that the federal agencies have unlawfully withheld or unreasonably delayed enforcement action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).  Saloojas asserts a claim under the Mandamus Act in the alternative, as well as a Fifth Amendment takings claim.

The Court holds that Saloojas's claims are not reviewable because enforcement decisions are committed to agency discretion.  Accordingly, the Court **GRANTS** the motion to dismiss.

## II.    BACKGROUND

A.    Statutory Framework

In 2020, as part of the federal government's response to the COVID-19 pandemic, Congress enacted FFCRA.  Pub. L. No. 116-127, 134 Stat. 178.  Section 6001 of FFCRA, titled "Coverage of Testing for COVID-19," requires group health plans and health insurance providers to cover the cost of COVID-19 diagnostic testing at no additional expense to insureds.  *Id.* § 6001(a).  Section 6001 also contains an enforcement provision, stating that the provisions of subsection (a) "shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury" to insurers "as if included in" certain provisions of the Public Health Service Act ("PHSA"), the Employee Retirement Income Security Act of 1974 ("ERISA"), and the Internal Revenue Code of 1986 ("IRC").  *Id.* § 6001(b).  The FFCRA further provides that the Secretaries of these respective agencies "may implement the provisions of this section through sub-regulatory guidance, program instruction or otherwise."  *Id.* § 6001(c).

The relevant FFCRA provisions state:

> (b) ENFORCEMENT. — The provisions of subsection (a) [mandating insurers to cover costs of COVID-19 diagnostic testing] ***shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury*** to group health plans and health insurance issuers offering group or individual health insurance coverage ***as if included in the provisions of*** part A of title XXVII of the Public Health Service ACT, part 7 of the Employee Retirement Income Security ACT of 1974, and subchapter B of chapter 100 of the Internal Revenue Code of 1986, as applicable.
>
> (c)  IMPLEMENTATION. — The Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury may implement the provisions of this section through sub-regulatory guidance, program instruction or otherwise.

Pub. L. No. 116-127, 134 Stat. 178 § 6001(b)–(c) (emphases added).

Later in 2020, Congress enacted the CARES Act.  Pub. L. No. 116-136, 134 Stat. 281. Section 3202 of the CARES Act addresses the pricing of COVID-19 diagnostic testing.  It provides that group health plans or insurers covering COVID-19 diagnostic testing "shall reimburse the provider of the [COVID-19] diagnostic testing" at either (1) a negotiated rate that was in effect prior to the public health emergency, or (2) if no negotiated rate exists, "an amount

that equals the cash price for such service as listed by the provider on a public internet website," unless the plan or issuer negotiates a lower rate. *Id.* § 3202(a). Section 3202 also imposes obligations on providers to list the cash price for any COVID-19 diagnostic testing on a public internet website. *Id.* § 3202(b)(1). The statute authorizes the Secretary of Health and Human Services to impose civil monetary penalties on providers that fail to comply with this price posting requirement. *Id.* § 3202(b)(2).

The relevant CARES Act provisions state:

> PRICING OF DIAGNOSTIC TESTING.
> (a) REIMBURSEMENT RATES. — A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of [the FFCRA] with respect to an enrollee shall reimburse the provider of the diagnostic testing as follows:
>
> . . .
>
> (2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website.
>
> (b) REQUIREMENT TO PUBLICIZE CASH PRICE FOR DIAGNOSTIC TESTING FOR COVID-19. —
>
> (1) IN GENERAL. — During the emergency period . . . each provider of a diagnostic test for COVID-19 shall make public the cash price for such test on a public internet website of such provider.
>
> (2) CIVIL MONETARY PENALTIES. — The Secretary of Health and Human Services may impose a civil monetary penalty on any provider of a diagnostic test for COVID-19 that is not in compliance with paragraph (1) and has not completed a corrective action plan to comply with the requirements of such paragraph, in an amount not to exceed $300 per day that the violation is ongoing.

Pub. L. No. 116-136, 134 Stat. 281 § 3202.

Following enactment of the FFCRA and CARES Act, HHS, the Department of Labor, and Treasury issued joint guidance, including a series of frequently asked questions, describing how the statutes would be implemented and enforced. The guidance stated that the Departments would enforce the applicable provisions of the FFCRA and CARES Act "in conjunction with states, where applicable." Dept. of Labor, Dept. of Health and Human Servs., and Dept. of the Treasury,

FAQs About Families First Coronavirus Response ACT and Coronavirus Aid, Relief, and Economic Security ACT Implementation Part 43 (June 23, 2020). The joint FAQs are silent about any mandatory obligation for Secretaries to investigate or enforce alleged non-payments. The only reference to enforcement mechanisms states that the CARES Act "grants the Secretary of HHS authority to impose civil monetary penalties on any provider of a diagnostic test for COVID-19 that does not comply with the requirement to publicly post the cash price for the COVID-19 diagnostic test on the provider's website . . . ."

The FFCRA and CARES Act direct the Secretaries of HHS, Department of Labor, and Treasury to apply the statutory provisions "as if included in the provisions" of the PHSA, ERISA, and IRC. Once § 6001 is incorporated into the PHSA, ERISA, and IRC, enforcement may proceed under the mechanisms established by those statutes. Understanding the legislative scheme is thus critical to assessing whether Saloojas has identified a legally required agency action.

       1.     <u>Public Health Service Act (PHSA)</u>

FFCRA § 6001 directs the HHS Secretary to incorporate its provisions "as if included" in Part A of title XXVII of the PHSA. Part A of title XXVII of the PHSA is codified at 42 U.S.C. § 300gg through 300gg-28. Section 300gg-22 is the PHSA's enforcement provision, laying out the Secretary's enforcement powers and the division of enforcement authority between HHS and the states.

Under § 300gg-22(a)(1), the states, and not HHS, serve as the primary enforcers of rules applicable to individual and group health plans: "each State may require that health insurance issuers that issue, sell, renew, or offer health insurance coverage in the State . . . meet the requirements of this part. "In the case of a determination by the Secretary that a State has failed to substantially enforce a provision (or provisions)," the HHS Secretary "shall enforce" those PHSA provisions." *See id.* § 300gg-22(a)(2).

Within HHS, PHSA enforcement activity has been delegated to the Centers for Medicare & Medicaid Services ("CMS"). *See* 76 Fed. Reg. 53903 (Aug. 30, 2011) ("Notice is hereby given that I [the Secretary of HHS] have delegated to the Administrator, Centers for Medicare &

Medicaid Services (CMS), or his or her successor, the authorities vested in the Secretary of the following provisions of Titles I, II, and X of the Affordable Care Act, *including Title XXVII of the Public Health Service Act* insofar as such parts pertain to CMS' mission.") (emphasis added); 45 C.F.R. Part 150 (titled "CMS Enforcement in Group and Individual Insurance Markets").  CMS itself may exercise discretion in determining whether to exercise enforcement authority.  45 C.F.R. § 150.203(b) provides, "If CMS receives or obtains information that a State may not be substantially enforcing PHS Act requirements, it *may initiate* the process described in this subchapter to determine whether the State is failing to substantially enforce these requirements." (Emphasis added).  The regulatory scheme contemplates that CMS will assess whether affected individuals or entities have made reasonable efforts to exhaust state remedies.  *Id.* § 150.209.

Under the PHSA, violations may be subject to monetary penalties of no more than "$100 for each day for each individual with respect to which such a failure occurs."  42 U.S.C. § 300gg-22(b)(2)(C).  Continuing violations may be subject to a minimum penalty of $2,500.  Importantly, the Secretary retains discretion to reduce or waive penalties if the violation occurred despite the exercise of reasonable care.  *See id.* § 300gg-22(b)(2)(D)–(b)(2)(E) (stating that no penalty shall be applied, and that the Secretary has discretion to waive any penalties for violations arising from the exercise of reasonable diligence); *see also* 45 C.F.R. § 150.315, 150.319, 150.321, 150.341 (applying similar guidelines on imposition of penalties by CMS).

2.    Employee Retirement Income Security Act (ERISA)

FFCRA § 6001(b) requires the Secretary of Labor to apply the COVID-19 test reimbursement provision "as if included in . . . part 7 of the Employee Retirement Income Security Act of 1974."  Part 7 of ERISA governs group health plan requirements and is codified at 29 U.S.C. § 1181 through 1191d.  Part 7 does not include any investigation or enforcement provisions.  *See* 29 U.S.C. § 1181–1191d.  Instead, Part 5 governs "Administration and Enforcement."  *See* 29 U.S.C. § 1131, *et seq.*

Section 1134(a) authorizes the Secretary of Labor to investigate compliance with group health plan requirements: "The Secretary shall have the power, in order to determine whether any person has violated . . . any provision of this subchapter or any regulation or order thereunder . . .

5

to make an investigation." 29 U.S.C. § 1134(a)(1). Section 1132(a)(2) states that "[a] civil action may be brought" by the Secretary. 29 U.S.C. § 1132(a)(2).

Unlike the PHSA, ERISA equips the Secretary of Labor with the power to initiate civil actions against employer-provided health plans to "enjoin any act or practice which violates any provision," or to "obtain appropriate equitable relief to redress such violations or enforce any provisions." *Id.* § 1132(a)(2), 1132(a)(5). However, the PHSA does not mandate the Secretary to initiate actions, thus impliedly leaving such enforcement to the Secretary's discretion. The Secretary of Labor also retains discretion to waive or reduce penalties if a "person otherwise liable for such penalty did not know, and exercising reasonable diligence would not have known, that such failure existed." *Id.* § 1132(b)(10)(D).

3.     <u>Internal Revenue Code (IRC)</u>

FFCRA § 6001(b) requires the Treasury Secretary to apply the COVID-19 test reimbursement provision "as if included in . . . subchapter B of chapter 100 of the Internal Revenue Code of 1986." Subchapter B of chapter 100 imposes certain requirements on group health plans and includes a cross-referenced enforcement provision stating: "For the imposition of tax on any failure of a group health plan to meet the requirements of this chapter, see section 4980D." 26 U.S.C. § 9834.

Section 4980D, titled "Failure to meet certain group health plan requirements," states: "There is hereby imposed a tax on any failure of a group health plan to meet the requirements of chapter 100 (relating to group health plan requirements)." 26 U.S.C. § 4980D(a) (parentheses in original). "The amount of the tax imposed by subsection (a) on any failure shall be $100 for each day in the noncompliance period with respect to each individual to whom such failure relates." *Id.* § 4980D(b)(1).

Thus, § 4980D imposes tax liability when certain conditions are met. But nowhere does § 4980D require the Treasury Secretary to investigate alleged violations or to initiate enforcement proceedings to require insurer reimbursements in response to complaints. *See* 26 U.S.C. § 4980D. Nor does the statute establish a timeline or any procedural requirements governing how the Secretary must administer the tax. Rather, § 4980D contains multiple provisions reflecting

discretion in administering the tax, including express authority for the Secretary to waive part or all of the tax where the person or entity otherwise liable "did not know, and exercising reasonable diligence would not have known," of their failure to comply, or where the tax "would be excessive relative to the failure involved." *Contrast id.* § 4980D(c)(1) (tax not to apply where failure not discovered with exercise of reasonable diligence) *and id.* § 4980D(c)(4) (waiver of penalties by Secretary "to the extent that the payment of such tax would be excessive relative to the failure involved), *with id.* § 5557 (in the context of alcoholic beverages, the Treasury Secretary "*shall investigate* violations of this subtitle and in any case in which prosecution appears warranted, the Secretary *shall report* the violation to the United States Attorney for the district in which such violation was committed") (emphases added).

B.    Factual & Procedural Background

Saloojas is an out-of-network provider of COVID-19 diagnostic testing based in Fremont, California. According to the Complaint, Saloojas provided 35,000 COVID-19 tests since 2020, including no-cost testing to over 3,000 uninsured patients. Complaint ¶¶ 22–23. Saloojas alleges that it performed COVID-19 diagnostic testing for individuals under group health plans and health insurance policies, including policies issued by Aetna Health of California, Inc., without having any negotiated reimbursement rates with those insurers. *Id.* ¶¶ 24–25.

Saloojas previously filed a lawsuit against Aetna, seeking reimbursement under the FFCRA and CARES Act. *Id.* ¶ 25. That action was dismissed on the ground that the FFCRA and CARES Act do not create a private right of action permitting providers to sue insurers directly for reimbursement. *See Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 2022 WL 2267786 (N.D. Cal. June 23, 2022) (Corley, J.). The Ninth Circuit affirmed those dismissals, holding that Congress did not authorize a private enforcement mechanism for providers, while noting that the statutes contain enforcement and implementation provisions applicable to the federal Secretaries. *See Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1015–16 (9th Cir. 2023) ("[T]he fact that these provisions provide an enforcement mechanism but only through the Secretaries suggests a lack of congressional intent to create a private right of action for providers."). The Ninth Circuit did not, however, state that enforcement by the Secretaries was mandatory or ministerial.

7

Saloojas has filed multiple other lawsuits against group health plans and insurers, all of which appear to have been dismissed for similar reasons. *See, e.g.*, *Saloojas, Inc. v. Cigna Healthcare of Cal., Inc.*, 2022 WL 5265141 (N.D. Cal. Oct. 6, 2022) (Breyer, J.) (holding that Saloojas lacked a right of action to sue insurers under the FFCRA or CARES Act); *Saloojas Inc. v. United Healthcare Ins. Co.*, 2023 WL 7393016 (N.D. Cal. Nov. 8, 2023) (Alsup, J.) (same); *Saloojas, Inc. v. Blue Shield of Cal. Life and Health Ins. Co.*, 2022 WL 4843071 (N.D. Cal. Oct. 3, 2022) (Chesney, J.) (same).

In the present action, Saloojas is not suing any insurers. Instead, it now sues HHS, the Department of Labor, the Department of the Treasury, and their respective Secretaries in their official capacities pursuant to the APA. Saloojas alleges that the agencies have failed to enforce the reimbursement requirements of the FFCRA and CARES Act against group health plans and insurers. Saloojas seeks declaratory relief, injunctive relief, and a writ of mandamus compelling the agencies to take enforcement action. Complaint ¶¶ 1–2, 43–63.

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, under Rule 12(b)(6) for failure to state a claim. Defendants argue that the statutes do not impose a non-discretionary duty on the agencies to take enforcement action, that enforcement decisions are committed to agency discretion, and that Saloojas lacks standing. Saloojas opposes the motion, contending that the statutory scheme requires the agencies to compel group health plans and insurers to reimburse providers who provided COVID-19 tests.

### III. LEGAL STANDARDS

A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Savage v. Glendale Union High School Dist. No. 205*, 343 F.3d 1036, 1040, n.2 (9th Cir. 2003). A facial challenge "asserts that the allegations contained in a complaint

United States District Court
Northern District of California

are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where the plaintiff cannot cure a jurisdictional defect by amendment, the court may dismiss the complaint without leave to amend.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Rule 12(b)(1) is also relevant because, absent a tenable APA claim, there is no subject matter jurisdiction to review alleged agency inaction.  *See Ecology Center, Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 926 (9th Cir. 1999).  Under § 706(1) of the APA, a claim "can proceed only where the plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*. . . . [C]ourts do not have the authority to enter general orders compelling compliance with broad statutory mandates."  *Gros Ventre Tribe v. U.S.*, 469 F.3d 801, 814 (9th Cir. 2006) (emphasis in original, internal citations and quotations omitted).  Lack of Article III standing also must result in dismissal under Rule 12(b)(1).  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *Daugherty v. Padagis US LLC*, 794 F. Supp. 3d 674, 685 (N.D. Cal. Aug. 6, 2025).

B.    Rule 12(b)(6)

A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

United States District Court
Northern District of California

## IV.    DISCUSSION

### A.    Reviewability and Standing

Defendants contend that Saloojas lacks standing because Saloojas's alleged injuries were caused by individual health insurance providers, rendering the causal chain between agency inaction and Saloojas's injury overly-attenuated. Relatedly, Defendants argue that Saloojas's alleged injury is not redressable by a favorable decision because any relief would depend on multiple contingent steps, including discretionary enforcement actions by the agencies and independent reimbursement decisions by third-party insurers.

Courts generally address standing before proceeding to the merits of a case. *See Seaview Trading, LLC v. Comm'r of Internal Revenue*, 858 F.3d 1281, 1287 (9th Cir. 2017). Here, however, Defendants' motion to dismiss presents threshold defects under the APA that are dispositive to another threshold question of reviewability. Resolution of the reviewability issue also informs the Article III standing analysis. The Court therefore resolves the APA reviewability issues first. *See id.* at 1287–88 (simultaneously considering merits and standing where the analyses were "inextricably intertwined").

### B.    Reviewability Under the APA

Saloojas's principal claims arise under section 706(1) of the APA, which prohibits agencies from unlawfully withholding or unreasonably delaying actions that they are legally required to take. 5 U.S.C. § 706(1) (a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed"). However, Section 706(1) does not provide a general license for courts to supervise agency enforcement decisions. Rather, the threshold question is whether Saloojas has identified a discrete agency action that the Secretaries are legally required to take.

The Supreme Court and Ninth Circuit have held that "§ 706(1) empowers a court to compel an agency 'to perform a ministerial or non-discretionary act,' or to take action upon a matter, without directing *how* it shall act. . . . Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 64 (2004) (emphases in original) (internal quotation marks omitted); *see also Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811

10

F.3d 1068, 1075 (9th Cir. 2016) ("A court can compel agency action under this section *only if* there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action.") (emphasis added); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (courts can compel agency action to comply with a legal obligation "so clearly set forth that it could traditionally have been enforced through a writ of mandamus").

Therefore, Saloojas's challenge to an agency action for unreasonable delay or non-enforcement can only proceed if Defendants ignored a specific legislative mandate.  Absent such a mandatory duty, Saloojas's claims against the agencies and Secretaries are unreviewable under § 706(1).  *See, e.g.*, *Bush v. Clover Stornetta, Inc.*, 2021 WL 2413269, at *2 (N.D. Cal. June 14, 2021) (holding that a "failure to act" or § 706(1) claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*.") (quoting *SUWA*, 542 U.S. at 64) (emphases in original); *Am. Hosp. Assn. v. Dep't of Health & Human Servs.*, 2021 WL 616323, at *7 (N.D. Cal. Feb. 17, 2021); *Zeiny v. Johnson*, 2014 WL 718667, at *3 (N.D. Cal. Feb. 24, 2014).  And although § 706(1) permits courts to compel an agency to take a legally required action without dictating the manner or substance of that action, it does not authorize the courts to order an agency to exercise enforcement discretion in the absence of a statutory command requiring such action.  *See SUWA*, 542 U.S. at 64–66.  For the reasons stated below, enforcement of the FFCRA and CARES Act statutes is committed to agency discretion by law and therefore unreviewable.

As a general rule, agency decisions regarding whether, when, and how to initiate enforcement proceedings are presumptively committed to agency discretion.  *See Heckler v. Chaney*, 470 U.S. 821, 832–33 (1985).  This presumption reflects Congress's intent to leave enforcement decisions involving complex judgments about priorities, resources, and policy objectives within agencies.  *Id.* at 832–33, 837–38.

The presumption of non-reviewability of agency enforcement or non-enforcement decisions is overcome in instances where Congress imposes meaningful standards constraining the agency's discretion, such as "where the substantive statute has provided guidelines for the agency

11

to follow in exercising its enforcement powers, . . . by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue." *Id.* at 832–33. The Ninth Circuit has repeatedly declined to compel agency enforcement actions where the governing statutes employ permissive language or delegate enforcement authority without mandating its exercise. *See, e.g.*, *Sierra Club v. Whitman*, 268 F.3d 898, 904 (9th Cir. 2001) (holding that permissive language authorizing the EPA to enforce the Clean Water Act "shows congressional intent to give the Administrator these options, not to require their use in all instances"); *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1086–87 (9th Cir. 2009) (holding in a non-APA context that "[n]othing in ERISA expressly compels [the Pension Benefit Guaranty Corporation] to pursue claims on the terminated plan's behalf" where the relevant statutory provision equipped the agency with power "to commence, prosecute, or defend on behalf of the plan any suit or proceeding involving the plan").

The above principles have been applied in this district to reject APA claims seeking to compel agencies to exercise enforcement authority, specifically where the operative statutory scheme contemplates state or third-party enforcement in the first instance. In *City and County of San Francisco v. U.S. Department of Transportation*, the court dismissed an APA claim seeking to compel federal regulators to exercise "more stringent oversight" over a state agency's enforcement of federal pipeline safety standards. 2013 WL 772652, at *1, 3–4 (N.D. Cal. Feb. 28, 2013) (Seeborg, J.). Judge Seeborg reasoned that, although federal law authorized oversight and enforcement if a state failed to "satisfactorily enforce[e] compliance" with federal standards, the determination of whether a state had in fact failed — and what to do in response — were committed to agency discretion. *Id.*

Saloojas does not challenge a specific agency decision but rather an alleged failure by federal agencies generally to enforce statutory requirements against group health plans and insurers. As noted above, the statutes at issue clearly vest the Secretaries with discretion in enforcement of the FFCRA and CARES Act. Saloojas's jurisdictional theory rests almost exclusively on the inclusion of the word "shall" in FFCRA § 6001(b) and CARES Act § 3202(a):

> The provisions of subsection (a) *shall be applied* by the [Secretaries]

12

to group health plans and health insurance issuers offering group or individual health insurance coverage as if included in [certain provisions of the PHSA, ERISA, and IRC].

FFCRA § 6001(b) (emphasis added).

A group health plan or a health insurance issuer providing coverage . . . *shall reimburse* the provider of the diagnostic testing as follows:

(1) If the health plan or issuer has a negotiated rate with such provider . . . such negotiated rate shall apply throughout the period of such declaration.
(2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website, . . .

CARES Act § 3202(a) (emphasis added).

Saloojas interprets this language as imposing a mandatory, ministerial duty on the Secretaries to initiate enforcement actions wherever insurers allegedly fail to reimburse providers in accordance with the FFCRA. But Saloojas's interpretation does not account for the statutory context. Section 6001(b) does not direct Secretaries to take any particular enforcement action. Nor does it specify when, against whom, or under what circumstances agencies must enforce the FFCRA against insurers. Rather, it merely states that the substantive requirements of § 6001(a) "shall be applied . . . as if included" within three pre-existing statutory schemes: the PHSA, ERISA, and the IRC. Read in its appropriate context, § 6001's use of "shall" governs how FFCRA's coverage requirements are situated within a broader federal legal framework, *not how enforcement actions must be exercised*. The statutes merely direct the HHS, the Department of Labor, and Treasury (and their respective Secretaries) to apply FFCRA provisions "as if included in the provisions" of the PHSA, ERISA, and IRC. Once FFCRA § 6001 is incorporated into the PHSA, ERISA, and IRC, enforcement proceeds under the mechanisms established by those statutes. As to that enforcement, § 6001(c) affords Secretaries wide latitude to "implement the provisions . . . through sub-regulatory guidance, program instruction or otherwise." Neither the FFCRA nor the CARES Act mandate a particular enforcement procedure, action, or remedy.

Taking a deeper dive, the Court examines the particular enforcement mechanisms under each incorporated statutory scheme.

13

United States District Court
Northern District of California

***HHS and the PHSA.***  As explained above, the PHSA delegates primary enforcement authority with the states, not HHS.  42 U.S.C. § 300gg-22(a)(1).  And the HHS Secretary's enforcement authority is contingent on states' failure to substantially enforce the provisions of the PHSA.  Critically, Saloojas's complaint does not allege that California state authorities failed to substantially enforce the relevant requirements or that either HHS or CMS made a determination triggering federal enforcement authority.  *See* Complaint.  Thus, there is not even an arguable predicate for enforcement action by the HHS or CMS.  Even if there were, there is no statutory language which mandates such federal enforcement action.  Nor is there any language precisely prescribing what those agencies must do to enforce the statutes.  *See id.* § 300gg-22 (granting the Secretary broad enforcement authority upon determining that a State has failed to substantially enforce the provision, including discretion to impose penalties of up to $100 per day and to adjust those penalties based on culpability and severity of harm).

***Department of Labor and ERISA.***  As reflected in the above discussion, the Secretary of Labor has discretionary authority to investigate and enforce compliance with ERISA requirements on employer-provided health plans.  The Secretary of Labor "shall have the power" to investigate purported violations of ERISA, but the statutory language does not *mandate* the exercise of that power.  Courts have recognized the Secretary of Labor has broad discretion in enforcement and non-enforcement decisions.  *See Dole v. Milonas*, 889 F.2d 885, 888 (9th Cir. 1989) ("The Secretary is charged with the enforcement of Title I of ERISA, . . . In performing this function, the Secretary is vested with broad investigatory powers to determine 'whether any person has violated or is about to violate' any provision of Title I.").  Saloojas does not identify any ERISA provision that would require the Secretary of Labor to initiate enforcement proceedings in response to a reimbursement dispute like this one.  Nor does Saloojas identify a statutory enforcement timeline, enforcement criteria, or remedies; nothing prescribes how the Secretary is to enforce the statute.  The text of FFCRA only requires the Secretary of Labor "shall" apply § 6001(a) as if it were part of Part 7 of ERISA.  This merely affirms that the Secretary of Labor may assume enforcement responsibility pursuant to ERISA.  *See* 29 U.S.C. § 1134.

***Treasury and IRC.***  As discussed above, the IRC equips the Treasury Secretary with

14

discretionary authority to impose an excise tax for noncompliance on provisions relating to group health plans. *See* 26 U.S.C. § 9834; 26 U.S.C. § 4980D. Section 4980D does not impose a non-discretionary duty on the Treasury Secretary to take any discrete enforcement action to require reimbursements by third parties to be distributed. *See id.* § 4980D does not require the Secretary to assess or collect the tax in response to a particular alleged violation, much less at the request of a third party. Accordingly, § 4980D does not supply the "discrete, legally required" agency action necessary to support review of a non-enforcement decision under § 706(1). *See SUWA,* 542 U.S. 55, 64–66 ("Section 1782(c) is mandatory as to the object to be achieved, but it leaves [the Bureau of Land Management] a great deal of discretion in deciding how to achieve it.").

Saloojas has not identified a "specific . . . command" that the agencies were "required to take." *Id.* at 63–64. *See Beltran Carrero v. Barr*, 2021 WL 1164768, at *5 (N.D. Cal. Mar. 26, 2021); *Zeiny v. Johnson*, 2014 WL 718667, at *3 (N.D. Cal. Feb. 24, 2014). Because Saloojas has not identified a discrete enforcement action that Defendants were legally required to take, the alleged inaction is not reviewable under § 706(1). The Court therefore lacks jurisdiction over Saloojas's APA claim, Saloojas fails to state a claim, and the claim must be **DISMISSED**.

C.     Mandamus Act

Saloojas also seeks an order compelling the agencies to enforce the FFCRA and the CARES Act against group health plans and insurance issuers, pursuant to the Mandamus Act, 28 U.S.C. § 1361. Complaint ¶¶ 54–63. For similar reasons as the APA claim, the mandamus claim fails.

A court may compel government action under the Mandamus Act when: "(1) the plaintiff's claim is clear and certain; (2) the duty is 'ministerial and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995) (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)); *see also SUWA*, 542 U.S. at 63 ("The mandamus remedy was normally limited to enforcement of 'a specific, unequivocal command,' the ordering of a 'precise, definite act . . . about which [an official] had no discretion whatever.'") (internal citations omitted). Even when the elements are satisfied, the Court retains discretion to compel agency action under the Mandamus Act. *Id.*

15

"Courts consider § 706(1) and mandamus claims together since they have 'mirror[ed]' requirements and 'the relief sought is essentially the same.'" *Mary Ferrell Found., Inc. v. Biden*, 2023 WL 4551066, at *7 (N.D. Cal July 14, 2023) (Seeborg, J.) (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021)). As established in the prior section, the agencies at issue here do not have a duty to act or to take any particular action prescribed by statute. Accordingly, there is no "ministerial" duty, as enforcement authority is committed to agency discretion by law. The Court thus **GRANTS** Defendants' motion to dismiss Saloojas's Mandamus Act claim.

D.    Fifth Amendment Takings Claim

In its opposition brief, Saloojas raises for the first time a claim that Defendants must act to prevent an unconstitutional taking. Opposition to MTD at 18–19. Specifically, because the FFCRA and CARES Act were intended to assure COVID-19 test providers would be reimbursed, non-enforcement deprives Saloojas of "a vested property interest — the right to reimbursement for bestowing a benefit on the American people." *Id.* at 19. The Court is under no obligation to examine an unpled claim, but does so to in order to address the potential right to amend the complaint. The Court concludes that any such amendment would be futile, because no set of facts could render this claim valid. *See Dolin v. Facebook, Inc.*, 2018 WL 2047766, at *2 (N.D. Cal. May 2, 2018) ("Where a complaint or claim is dismissed, leave to amend generally is granted unless further amendment would be futile. In assessing whether leave to amend is warranted, the Court may consider new facts, if any, presented in an opposition to a motion to dismiss.")

The Fifth Amendment prohibits the taking of private property "for public use, without just compensation." *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). Under Ninth Circuit precedent, a takings claim must identify a specific, vested property interest rather than a unilateral expectation of payment or favorable regulatory action. *See Zeyen v. Bonneville Joint Dist., #93*, 114 F.4th 1129, 1142–43 (9th Cir. 2024). A protected property interest requires a "legitimate claim of entitlement," not "an abstract need, desire, or unilateral expectation" of it. *Reynolds v. Saddleback Valley Unif. Sch. Dist.*, 2025 WL 1114015, at *6 (C.D. Cal. Mar. 4, 2025) (quoting *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1191 (9th Cir. 2015).

Saloojas frames the alleged property interest as a right to reimbursement arising from the

United States District Court
Northern District of California

FFCRA and CARES Act.  It is not clear that the statutes confer a vested entitlement to reimbursement, let alone an entitlement enforceable against the federal government rather than the insurers themselves.  The reimbursement obligations run from insurers to providers.  The statutes do not obligate the federal government to pay providers in lieu of insurers, nor do they guarantee reimbursement in the event insurers fail to comply.  Instead, Congress implemented a discretionary enforcement scheme, delegating investigatory and enforcement authority to agencies operating within pre-existing statutory frameworks (PHSA, ERISA, and IRC).  While the statutes set up a scheme requiring insurers to pay providers who provide services covered by the laws in question, the statutes do not mandate providers to participate in the program.  Providers are not required to provide services.  At best, the statutes raise an expectation of payment, but they do not guarantee payment nor guarantee that the government will take action to assure that insurers pay.

Thus, Saloojas does not allege that the government seized funds or property.  The alleged harm is non-payment by private third parties.  While Saloojas and other providers may have a fair expectation that the statutory scheme will function as intended, and that insurers will fulfill their legal obligation to pay, that expectation is not a vested property right.  Courts have repeatedly rejected attempts to convert such expectations into constitutionally protected interests.  *See, e.g.*, *Boykin v. Boeing co.*, 128 F.3d 1279, 1283 (9th Cir. 1997) ("In order for a vested right to be entitled to protection from legislation, it 'must be something more than a mere expectation based upon an anticipated continuance of the existing law.'"); *Nguyen v. Cnty. of Clark*, 732 F. Supp. 2d 1190, 1193 (W.D. Wash. 2010) ("However, a right cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws.").

Even assuming Saloojas could identify a vested property interest, its taking theory rests on a largely rejected premise that governmental non-enforcement of a statute against third parties can constitute a taking.  Courts have reiterated that only affirmative conduct by the government can give rise to a viable takings claim.  A failure to act does not generally constitute a taking.  *See, e.g.*, *Alves v. U.S.*, 133 F.3d 1454, 1458 (Fed. Cir. 1998) (Bureau of Land Management's failure to successfully enforce a regulation does not constitute a taking under the Fifth Amendment); *Griffin*

*Broadband Commc'ns, Inc. v. U.S.*, 79 Fed. Cl. 320, 324 (Fed. Cl. 2007) ("A necessary component of any takings claim is that the Government actually took property, . . . the Government's failure to prevent Army personnel and families (acting in their private capacity, not as agents of the Government) properly is characterized as inaction, and so cannot constitute a taking.") (parentheses in original); *Harris Cnty. Flood Control Dist. V. Kerr*, 499 S.W.3d 793, 799–800 (Tex. 2016) ("We have always characterized a takings claim as based on some affirmative 'act' or 'action' of the government. . . . A government cannot be liable for a taking if 'it committed no intentional acts.'"); *Valles v. Pima Cnty.*, 776 F.Supp.2d 995, 1003 (D. Ariz. 2011) ("Essentially, it is Plaintiffs' position that Pima County should have taken action to circumvent the harm caused by WSP's botched development project . . . . [T]he takings cases discussed above all involve an affirmative, overt action by the government — by the adoption of a regulation, the implementation of a redevelopment plan, the acquisition of an easement, etc. — that directly causes a diminution in private property values.").

The Takings Clause protects against government appropriation of property, not against the government's failure to coerce private actors to comply with statutory obligations. Saloojas' takings claim essentially operates as a re-packaging of Saloojas's APA enforcement arguments, but in constitutional terms.

For the foregoing reasons, the Court **DISMISSES** Saloojas's takings claim.

E.      Leave to Amend

Saloojas's claims fail as a matter of law because § 706(1) does not authorize review or judicial compulsion of the relief sought. The FFCRA and CARES Act provisions concerning COVID-19 test reimbursements are incorporated into existing statutory frameworks (PHSA, ERISA, and IRC) that confer broad, discretionary enforcement authority and do not mandate the agencies or Secretaries to investigate, initiate proceedings, or obtain reimbursement for a particular provider upon receipt of a complaint. No additional allegations will cure the specific legal deficiencies identified, and amendment would thus be futile. *See, e.g.*, *Berg v. McHugh*, 2015 WL 9024622, at *9 (N.D. Cal. Dec. 16, 2015) ("Courts should grant leave to amend to cure jurisdictional defects unless the amendment would be futile."); *Zhu v. Noem*, 2025 WL 1723157,

United States District Court
Northern District of California

at *6 (C.D. Cal. May 9, 2025) (holding, in the context of a mandamus claim to compel USCIS to adjudicate asylum application, that "because Plaintiff's claim for mandamus relief fails as a matter of law, amendment would be futile").

The Court is sympathetic to the frustration faced by Saloojas who responded to public need and provided services with a fair expectation of payment. But the law under the APA is clear. The Court is without power to review the Secretaries' action or inaction with respect to federal enforcement of the statutes at issue.

Accordingly, the Court **DISMISSES** Saloojas's complaint **WITHOUT LEAVE TO AMEND**.

V.    **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss **WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED**.

Dated: February 12, 2026

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

19